Argued and submitted December 10, 1979,
reversed and remanded February 11, 1980

LIEDTKE,
*Appellant,*
*v.*
PACCAR, INC.,
*Respondent.*

(No. A7712 17711, CA 12743)

605 P2d 1377

Donald J. Friedman, Portland, argued the cause for appellant. With him on the briefs was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

E. Richard Bodyfelt, Portland, argued the cause for respondent. With him on the brief were Peter R. Chamberlain, and Bodyfelt & Mount, Portland.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Plaintiff, a truck driver for Safeway, appeals from a directed verdict in favor of defendant, the manufacturer of a truck tractor from which plaintiff fell because of its allegedly unreasonably dangerous defective condition. We reverse and remand.

The issue is whether there was sufficient evidence so that a jury could find the vehicle to be unreasonably dangerous because the fuel tank on the left side of the chassis, from which plaintiff fell, did not have a level surface step on top of it and/or slip resistant material to protect against slips and falls. The defendant argues that the fuel tank was not intended to be stepped upon and that there were two apparent and available safe alternative means of achieving the objective plaintiff attempted to accomplish by mounting the left side of the tractor.

Viewed most favorably to plaintiff, the evidence is consistent with the following facts. Plaintiff was injured in February, 1976, when he fell from a cylindrical fuel tank on the left side of the tractor. After hooking up the tractor to the trailer of the truck, plaintiff mounted the fuel tank to gain access to air and electric hoses which were to be attached to the trailer. The hoses were located on hangers, known as "dummy glad hands," on which they were hung when the tractor and trailer were not connected. The hangers were located behind the cab, approximately 26 inches measured horizontally from the left side of the tractor. They could be reached from the ground on the left side, but plaintiff and other drivers using the same kind of truck customarily approached the hangers from the deck plate, an elevated area located in the center of the tractor behind the cab.

The means generally followed to approach the deck plate was from the left side, by ascending on a step located directly beneath the fuel tank, grabbing handles at the rear of the cab door and behind the cab, stepping up to the top of the fuel tank, and then

[463]

stepping onto the deck plate. There was no level step on top of the fuel tank, and there was no material on the fuel tank to retard slipping. The deck plate could be reached from the right side of the tractor by stepping onto a "J-step," and by reaching for a grab handle located behind the exhaust pipe. There was slip retardant material on the J-step. The exhaust pipe was covered by a chrome heat shield. There was evidence from which the jury could find that contact with or proximity to the shield on the exhaust pipe could result in burns.

Some evidence suggested that it was possible to attach the hoses to the trailer from the ground, but there was also evidence that that could not be accomplished after the tractor and the trailer were connected, because the fuel tank on the left side had been constructed with a larger capacity than was called for by Safeway's specifications so that there was not adequate space behind the tank to enable a person standing on the ground to reach the connection points on the trailer. There was also testimony that it was possible to connect the hoses to the trailer before the trailer was hooked up to the tractor in such a way that it would be unnecessary for the driver to mount the deck plate to make the connection, and there was testimony to the contrary.

The truck was sold to Safeway by defendant in 1972. It had been manufactured by defendant, in general accordance with Safeway's specifications but with some deviations from and additions to those specifications made by defendant. There was evidence to indicate that Safeway had expressly told defendant that it intended the step beneath the fuel tank and the grab handles on the left side to be used by drivers to reach the deck plate from that side. There was also evidence that after Safeway had specified that a step beneath the fuel tank was to be provided, defendant installed the left side grab handles on its own initiative as a safety measure. There was testimony by a design employee of a competitor of defendant's that a truck

manufacturer could reasonably expect drivers of trucks of the kind involved to mount the left side of the chassis on some occasions.

In granting the defendant's motion for a directed verdict, the trial court relied on *Askew v. Howard-Cooper Corp.,* 263 Or 184, 502 P2d 210 (1972). In that case, the plaintiff was injured when he descended from a boom he had climbed to grease the fittings on a log lifting and handling machine. The boom was set in its highest position. With the boom in its lowest position, only two of its fittings could not be greased from the ground. The court noted that all that would have been required to avoid the need for climbing the boom when it was in the lower position was "[a] solid place to stand, three feet high, like a log, platform, or short ladder \*\*\*." 263 Or at 187. The court rejected plaintiff's contention that the failure of the manufacturer to equip the machine with ladders, steps, rails, or other means to climb to the top of the boom rendered the machine unreasonably dangerous.

In affirming the nonsuit granted below the court stated:

"It is our opinion that the manufacture of equipment with grease fittings which are thus safely and easily accessible does not constitute negligence. The manufacturer should not be required to anticipate that the purchaser will direct his employes to follow an obviously dangerous method of servicing equipment (as the purchaser did in the present case) when safe methods are readily apparent and available. If the manufacturer was not negligent in making the machine, the immediate seller was not negligent in selling it.

"In order to be unreasonably dangerous so as to substantiate strict liability on the part of the seller, it must be shown that '[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' Restatement (Second) of Torts § 402A, Comment i. (1965).

[465]

"It is our belief that, as a matter of law, we can say that the community would not condemn a machine as unreasonably dangerous which could be serviced in the manner described and without the necessity of climbing ten feet off the ground." 263 Or at 187-188.

In this case, the trial court explained the directed verdict by analogizing the plaintiff's ability to approach the deck plate from the right side of the tractor and his ability to attach the hoses to the trailer from the ground to the "readily apparent and available" safe methods of servicing the equipment in *Askew.* We disagree that the two situations are analogous or, at least, that it can be said as a matter of law that they are. There was evidence in the present case from which the jury could find that it was not practicable or maybe even possible to attach the hoses without ascending the deck plate and that, because of the temperatures from the exhaust pipe, it was not safe to approach the deck plate from the right side of the chassis.

This case differs from *Askew* perhaps more fundamentally in that if all inferences favorable to the plaintiff are drawn, the manufacturer was not asked to anticipate that the purchaser or its employees would "follow an obviously dangerous method of servicing equipment" which was not foreseen at the time the product was manufactured. In *Askew,* the boom was not intended for climbing on, as evidenced by the fact it was not equipped with ladders, steps, rails, or other mounting access. Conversely, in this case, there was evidence that the manufacturer deliberately provided a method of approaching the deck plate from the left side of the tractor (through the step below the fuel tank and the hand rails on the left side); there is also evidence which would support a finding that Safeway directed the manufacturer to provide a means of access from the left side.

The directed verdict was error.

Reversed and remanded.